IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**SHARON MCGHEE,**                              Case 1:14 CV 1997

    Plaintiff,

    v.                                          Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                 MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Sharon McGhee filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 11). For the reasons stated below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB on October 17, 2011, alleging a disability onset date of date of December 1, 2008. (Tr. 70). Plaintiff applied for benefits due to arthritis, carpal tunnel in both hands, a knee injury, and a back injury. (Tr. 70). Her claim was denied initially (Tr. 70-79) and upon reconsideration (Tr. 80-90). Plaintiff requested a hearing before an administrative law judge ("ALJ") on May 17, 2012. (Tr. 111). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on February 19, 2013, after which the ALJ found Plaintiff not disabled. (Tr. 10-22, 27-68). The Appeals Council denied Plaintiff's request

for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on September 9, 2014. (Doc. 1).

## FACTUAL BACKGROUND

*Personal Background and Testimony*

Plaintiff was born on March 22, 1962, and was 48 years old at the time of her DIB application and 51 years old as of her date last insured, December 31, 2013. (Tr. 33). She had a driver's license and drove herself to the hearing. (Tr. 41). She had an associate's degree in computer science. (Tr. 60). Plaintiff lived with her husband and youngest son. (Tr. 49). She had prior work as an office services coordinator. (Tr. 47).

Plaintiff testified to constant pain in her back and leg that also caused difficulty sleeping, however, she napped daily for a couple of hours at a time. (Tr. 36, 43). Although she took medication to help with the pain and with sleeping, it was only minimally successful. (Tr. 37). She had difficulty doing laundry, grocery shopping, cooking, and washing dishes due to her carpal tunnel but she did some chores. (Tr. 35, 50, 73). Plaintiff stated she had difficulty putting on socks, shoes, and buttons but in general was capable of maintaining her personal care. (Tr. 50, 186). She also had difficulty writing and using stairs. (Tr. 73). Her pain was exacerbated by sitting or standing for long periods but it was helped by wearing braces, medication, and heat. (Tr. 38). She also testified to pain in her shoulders and neck, which had a decreased range of motion. (Tr. 45).

She believed she could stand for only a few minutes at a time, could not lift more than a gallon of milk, could only sit for up to fifteen minutes, and could walk for less than five minutes at a time. (Tr. 39-41). Plaintiff denied stating that she drank daily and stated she was not chemically dependent. (Tr. 51-53). She also stated that while physical therapy had been

recommended for her back and leg pain, she was not pursuing that treatment at the time of the hearing. (Tr. 53).

*Relevant Medical Evidence*[1]

*Back and Leg Problems*

Timothy Moore, M.D., performed back surgery on October 29, 2008, to correct Plaintiff's lumbar spinal stenosis and spondylolisthesis. (Tr. 244, 247-50). At appointments in late 2008 and 2009, she reported doing well following her back surgery and stated the butt and leg pain was gone. (Tr. 235, 238, 241). Plaintiff complained of back pain with excessive activity, and Dr. Moore cautioned Plaintiff in April 2009, "there are things that she won't be able to do that she used to." (Tr. 235, 238). In late 2009, a chest x-ray showed degenerative changes in her thoracic spine. (Tr. 219).

At an appointment with Samuel Rosenberg, M.D., in January 2010, Plaintiff complained of left sided lumbar pain and rated it as a five out of ten on the pain severity scale. (Tr. 339). Dr. Rosenberg diagnosed her with a herniated disc and spinal stenosis and prescribed her an Aspen brace. (Tr. 340). A few months later she returned to Dr. Rosenberg complaining of aching pain in her lower back. (Tr. 341). A straight leg raise test was negative bilaterally and her motor and sensory function was intact. (Tr. 342). On May 3, 2010, a chest x-ray revealed mild dextroscoliosis of the dorsal spine. (Tr. 207). In June 2010, Plaintiff's back pain had spread into her calves and become sharp. (Tr. 343). Dr. Rosenberg continued the use of the Aspen brace and recommended an epidural steroid injection. (Tr. 344). By February 2011, the pain had spread to the upper thoracic region and had increased in severity. (Tr. 349-50, 355).

---

1. Plaintiff only contests the ALJ's findings with respect to her physical impairments and thus, she has waived the ability to contest his determination regarding her mental impairments. *Swain v. Comm'r of Soc. Sec.,* 379 F. App'x 512, 517-18 (6th Cir. 2010). As such, the medical evidence discussed herein will be limited to that relevant to her claims of physical impairments.

Following a car accident in April 2011, Plaintiff noticed an increase in her back pain as well as pain in her neck, elbows, and right knee; prior to this accident she was doing well. (Tr. 297). She underwent physical therapy to alleviate pain from cervical, thoracic, lumbar, bilateral elbow, and right knee strains/sprains. (Tr. 297-99, 303-22). In August 2011, on physical examination Plaintiff had improved range of motion, minor back pain with straight leg raises, some tightness but good strength in the lower extremities, and no sensory deficits. (Tr. 297). Although the physical therapy was successful, Todd Hochman, M.D., recommended Plaintiff get an MRI, x-rays, and follow-up with Dr. Moore, her orthopedic surgeon. (Tr. 297, 588).

On October 19, 2011, Plaintiff had an MRI of her lumbar spine which revealed mild spondylolisthesis and mild degenerative changes post-surgery. (Tr. 427). About a month later, Plaintiff's pain had migrated to her hip and calf and she was reporting persistent numbness and weakness in her arms and legs. (Tr. 353). Dr. Rosenberg noted disc fusion at L3/L4/L5 and myofascial back pain. (Tr. 354). An x-ray from January 2012 showed no changes from the previous x-ray. (Tr. 547). By March 2012, Plaintiff's back pain had returned to a five out of ten on the severity scale and she remarked her medication was effective at providing pain relief 90% of the time, she could manage her activities of daily living independently, and her quality of life was average. (Tr. 378). A few months later, Dr. Rosenberg dismissed Plaintiff from his care due to problems with her narcotic medications and a potential addiction to pain pills. (Tr. 576).

In July 2012, Plaintiff consulted Joanne Schneider, CNP, at the Neurological Center for Pain Evaluation for potential participation in a chronic pain rehabilitation program. (Tr. 541). On physical examination, she had normal gait, could heel/toe walk, squat and rise, and had normal strength and reflexes bilaterally in her upper and lower extremities but limited lumbar motion and joint tenderness. (Tr. 543). She also denied ever running out of opioids early. (Tr. 579, 582).

4

An x-ray of Plaintiff's right knee from February 2013 showed mild medial and patellofemoral narrowing with a lack of osteophytes and trace joint effusion. (Tr. 642). An x-ray of her right hip done at the same time was normal. (Tr. 645).

*Carpal Tunnel Syndrome*

In November 2009, Plaintiff saw William Seitz, M.D., on referral from her primary care physician Rajesh Sharma, M.D., related to pain, numbness, and tingling in her right hand that was interfering with her activities of daily living. (Tr. 215). An x-ray from that visit showed no significant bone or joint abnormalities and no significant changes from a February 2008 x-ray. (Tr. 215-17). In January 2010, Plaintiff had surgery to correct severe median nerve compression from carpal tunnel syndrome in her right wrist. (Tr. 212). Following surgery, she underwent physical therapy on her right wrist with the goal of being able to sleep and write without pain. (Tr. 223-24).

In April 2012, Plaintiff reported decreased grip strength, numbness, swelling of the thumb, and persistent stiffness in her left hand to Dr. Sharma. (Tr. 422). On examination, she had full range of motion and negative Tinel's and Phalen's tests. (Tr. 423, 539). However, her wrist pain persisted, an x-ray showed arthritis and a radial ossicle, and she scheduled surgery with Dr. Seitz for the end of September. (Tr. 536, 556-58, 560, 569). By the end of the year Plaintiff was wearing a brace on her left wrist. (Tr. 534). Following her surgery, Plaintiff participated in physical therapy to increase her strength and range of motion; she was moderately successful at reaching her goals. (Tr. 611-41).

*State Agency Reviewers*

On January 30, 2012, William Bolz, M.D. opined she could occasionally lift or carry up to 50 pounds, frequently lift or carry 25 pounds, could sit, stand, or walk for six hours a day, and

5

had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 77). On reconsideration, Lynne Tordello, M.D., concurred with Dr. Bolz's exertional limitations but found that Plaintiff had a limited ability to handle and finger with her left hand due to carpal tunnel syndrome. (Tr. 87-88).

*Consultative Examinations*

On January 24, 2012, Plaintiff underwent a consultative physical examination with Edward Butler, M.D., where she complained of arthritis of her elbows and right knee, lower back pain, thoracic spine pain, and bilateral carpal tunnel syndrome. (Tr. 365-66). Plaintiff told Dr. Butler she drank occasionally, cooked twice a week, cleaned once a week, showered four times a week, and dressed herself daily. (Tr. 367). During the day she watched TV, listened to the radio, and read. (Tr. 367). On physical examination, Plaintiff was in no acute distress, had normal gait, could walk heel/toe without difficulty, performed a full squat, used no ambulation assistants, could get on and off the exam table without assistance, and could rise from a chair without difficulty. (Tr. 367).

Dr. Butler also observed bilateral negative straight leg raise tests, no effusion, heat, or tenderness, crepitance in the right knee, full strength in the upper and lower extremities, normal bilateral handling and fingering, and normal range of motion everywhere except for the dorsolumbar spine. (Tr. 368-74). An x-ray of Plaintiff's back revealed fusion and laminectomy from L3-L5 and mild anterior listhesis but there were no changes in the findings from the previous x-rays. (Tr. 375). Dr. Butler opined Plaintiff had mild limitations in pushing, pulling, lifting, climbing, and with repetitive activities in the upper extremities. (Tr. 369).

6

*VE Testimony and ALJ Decision*

The VE characterized Plaintiff's past work as an administrative assistant with sedentary exertion level and an SVP of 7.[2] The ALJ hypothesized an individual with Plaintiff's same age, education, and vocational background except that she could stand, walk, or sit for six hours out of an eight hour day with normal breaks and was limited to frequent handling and fingering. The VE stated she could perform her past work. (Tr. 60-61). The VE clarified that a person at the medium exertion level could perform Plaintiff's past work and also that the same individual hypothesized above could perform the past work even if restricted to sedentary exertion. (Tr. 61). The VE opined that a sit/stand option requiring a five minute break every hour would render the individual unable to perform the Plaintiff's past work. (Tr. 62, 66).

On cross-examination, the VE testified that if the hypothetical individual was limited to only occasional handling and fingering, she would be unable to perform past work. (Tr. 63). He further opined that an individual with the use of only one hand, if still able to frequently handle and finger, could perform the work of administrative assistant. (Tr. 64). The VE also testified if the person would miss work once a week she would not be employable. (Tr. 65).

In May 2013, the ALJ found Plaintiff had the severe impairments of spine disorders consisting of degenerative disc and failed back surgery syndrome of the lumbar spine, and carpal tunnel syndrome status post release surgery; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 15-16). The ALJ then found Plaintiff had the RFC to perform medium work with the ability to lift and carry 50 pounds occasionally and 25 pounds

---

2. Specific Vocational Preparation ("SVP") is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. There are nine SVP levels. SVP 7 indicates an adjustment period of over two years and up to and including four years. UNITED STATES DEPARTMENT OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, APPENDIX C (4th Ed., Rev. 1991), *available at* www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

frequently, she could sit, stand, or walk for six hours out of an eight hour day, but was limited to only frequent handling and fingering. (Tr. 17). Based on the VE testimony, the ALJ found Plaintiff could perform her past relevant work as an Office Services Coordinator. (Tr. 22).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred in (1) finding her capable of medium work; and (2) in not applying the medical-vocational guidelines at Step Five. (Doc. 14, at 1).

### Substantial Evidence for RFC

Plaintiff argues substantial evidence does not support her ability to perform medium work because the medical evidence clearly shows she is impaired in her ability sit, stand, walk, lift,

9

handle, and finger. (Doc. 14, at 11).

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up 25 pounds. 20 C.F.R. § 404.1567(c). If someone can do medium work, it is determined that she can also perform light and sedentary work. *Id.* A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. An ALJ must also consider and weigh medical opinions. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1.

In his determination, the ALJ discussed a number of findings and opinions which indicate Plaintiff was capable of medium work during the relevant period. (*See* Tr. 18-21). For example, she recovered well from her back surgery in 2008 and reported no more than intermittent discomfort until 2010, physical therapy was successful at improving her range of motion and strength, medication was effective at controlling her pain, she had negative straight leg raise tests, normal gait, strength, and reflexes in the upper and lower extremities, and no significant worsening of her back condition since her surgery in 2008. (*See* Tr. 19-21, 77, 238, 241, 297, 339, 342, 367-375, 378, 427, 543, 547, 611-41). Further during a consultative examination, Dr. Butler observed her physical restrictions to be mild and unremarkable as evidenced by her ability to walk without assistive devices, perform a full squat, get on and off the exam table without assistance, and bilateral negative straight leg raise tests. (Tr. 20, 367). All of this suggests the ALJ was reasonable in his conclusion that Plaintiff was capable of doing more than to which she

10

testified.

Plaintiff argues the evidence clearly shows she is not capable of medium work. For example, she had undergone multiple surgeries with little success, medical records showed her ability to sit, stand, walk, and grasp are limited by pain and braces, diagnostic testing revealed moderate to severe carpal tunnel and spondylolisthesis of the spine, and Dr. Moore cautioned her that there are things she will no longer be able to do. (Doc. 14, at 13-14). All of this is true and is discussed in the ALJ's opinion yet Plaintiff provides no analysis of this evidence in regard to how this evidence proves her inability to work at the medium level. It is not a diagnosis that creates disability but rather "the functional limitations imposed by a condition". *Hill v. Comm'r of Soc. Sec.,* 560 F. App'x 547, 551 (6th Cir. 2014).

Importantly, none of Plaintiff's treating physicians ever opined regarding her ability to work or the limiting effects of her impairments on her activities of daily living. (Tr. 21). Plaintiff asserts Dr. Moore's comment that "she will not be able to do things she used to do" supports her argument. (Tr. 235); (Doc. 14, at 14). However, this passing comment was vague, unsupported by evidence, not explained in terms of functional abilities, and did not address her long-term prognosis, which is particularly relevant as the comment was made only six months after her back surgery. (Tr. 235). Even if this was a medical opinion (and the Court does not believe it was), an ALJ is not required to credit opinions that are unsupported and unexplained. 20 C.F.R. § 404.1527(c)(3); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004). Thus, this comment was patently deficient and the ALJ need not have credited it in making his determination about Plaintiff's abilities. *Wilson*, 378 F.3d at 547.

When reviewed in total, the ALJ performed an adequate review of the available evidence and opinions and had substantial evidence to support his finding that Plaintiff was capable of a

11

reduced level of medium work. It is also worth noting that the ALJ concluded Plaintiff was capable of her past work, a sedentary position; and thus, although the RFC reflects maximum work ability, in this case it would not be required for Plaintiff to return to work. (Tr. 22). In this case, Plaintiff's complaints and the medical evidence establish the existence of impairments, but the subsequent medical observations do not support severe functional limitations. Where, as here, the ALJ had substantial evidence to support his determination, the Court will not overturn his findings even if substantial evidence also supports Plaintiff's argument. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

*Use of the Grid*

Plaintiff also alleges the ALJ erred in not utilizing Medical-Vocational Guideline 201.14 to find her disabled. (Doc. 14, at 15-16). An ALJ may find disability by applying the Medical-Vocational Guidelines, also referred to as the "grids", which dictate a finding of "disabled" or "not disabled" based on the claimant's exertional limitations, age, education, and prior work experience. *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987); *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 528 (6th Cir. 1981). The grids are a shortcut to eliminate the need for calling a VE. *Hurt v. Secretary of Health and Human Servs.*, 816 F.2d 1141, 1143 (6th Cir. 1987). However, an ALJ may only use the grid if it is determined that Plaintiff cannot perform their past relevant work. *Cole*, 820 F.2d at 771.

Plaintiff argues that if she is limited to sedentary work, then the grids require a finding of disability. (Doc. 14, at 15-16). However, this argument has two flaws: one, Plaintiff's RFC is for medium work and thus, would not meet the grid requirements; and two, the ALJ found Plaintiff was capable of performing her past work as an Office Services Coordinator which means that the disability evaluation ends before even reaching Step Five. (Tr. 22). Since, the ALJ never reached

Step Five of the disability evaluation he could not have erred by not using the grid. Thus, as the Court has already found the ALJ's RFC determination was supported by substantial evidence and the VE testimony supported his finding that Plaintiff was capable of past work, no error exists. Therefore, the Plaintiff's second assignment of error is overruled.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.

                                             s/James R. Knepp II
                                             United States Magistrate Judge